**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
FRANCHESCA SABEHA

                                        **Case No.:**

                            **Plaintiff,**

                -against-                        **DEMAND FOR A JURY TRIAL**

LINDA STRUMPF, ESQ.
U.S. EQUITIES CORP.

                            **Defendants.**
-------------------------------------------------------------------X

**COMPLAINT**

    Plaintiff Franchesca Sabeha, by and through her attorneys, brings suit against Defendant

for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*, and N.Y.

General Business Law § 349 *et seq*, and in support would show as follows.

**PRELIMINARY STATEMENT**

1.  This suit challenges Defendants' unlawful and deceptive conduct against Franchesca Sabeha

    ("Ms. Sabeha"). Defendants deceptively filed a time barred lawsuit and secured a default

    judgment against Ms. Sabeha by filing a false affidavit of service. Defendants then executed

    on the judgment when  a cursory review of the summons and complaint would have shown

    that the actions was time-barred. These actions blatantly violated rules governing debt

    collection and were designed to injure Ms. Sabeha to collect money that was not legally owed.

    Defendants' unlawful practices caused Ms. Sabeha, a single parent to two children who is

    employed by a non-profit staffing a homeless shelter, to became financially unstable and suffer

    significant emotional distress. Ms. Sabeha brings this action pursuant to the Fair Debt

    Collection Practices Act ("FDCPA") and N.Y. General Business Law § 349 to seek redress for

1

the immense harm caused by Defendants' unlawful conduct.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, under

the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., ("FDCPA"), and supplemental

jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3.  Venue in this District is proper because a substantial part of the events giving rise to the claims

occurred in Bronx County, New York.

## PARTIES

4.  Plaintiff Franchesca Sabeha, is natural person residing at 2130 Madison Ave, Apt. 11A, New

York, NY 10037.

5.  Ms. Sabeha is a "consumer" as that term is defined by § 1692a(3) of the FDCPA. Ms. Sabeha

was alleged to owe a debt arising from the credit card purchases for personal and/or household

use.

6.  Defendant Linda Strumpf ("Attorney Strumpf") is a "debt collector" within the meaning of §

1692a(6) of the FDCPA.  Attorney Strumpf is regularly engaged in the business of collecting

debts in New York State.

7.  Attorney Strumpf has filed thousands of lawsuits on behalf putative creditors for the collection

of consumer debts including furniture purchases, car loans, and putative credit card accounts.

8.  When contacting Attorney Strumpf's office by telephone, an automated message advises the

caller that they have contacted a debt collector. Similarly, Attorney Strumpf's email signature

advises recipients of the email that "This communication is from a debt collector."

9.  Attorney Strumpf's principal place of business in New York is located at 69 Fox Run, South

Salem, NY 10590-2403. Upon information and belief, Attorney Strumpf is a solo practitioner.

10. Attorney Strumpf also maintains a place of business in Connecticut located at 244 Colonial Road, New Canaan, CT 06840.

11. Defendant U.S. Equities Corp. ("U.S. Equities") is a "debt collector" within the meaning of § 1692a(6) of the FDCPA. U.S. Equities' sole business is purchasing defaulting debts and collecting them through means including but not limited to the filing of debt collections law suits.

12. Upon information and belief, U.S. Equities' principal place of business is located at 244 Colonial Road, New Canaan, CT 06840.

13. Upon information and belief, Attorney Strumpf is the Chief Executive Officer of U.S. Equities.

## STATEMENT OF FACTS

14. On or around January 11, 2005, U.S. Equities, filed suit against Ms. Sabeha in the Civil Court of the City of New York, Bronx County.

15. The lawsuit, U.S. Equities Corp. v. Franchesca Bujan,[1] Index CV-001159-05/BX ("the collection action"), alleged that Ms. Sabeha breached her contract with Providian Bank by defaulting on a credit card debt owed to Providian Bank.

16. U.S. Equities was represented in the action by Attorney Strumpf.

17. Upon information and belief, Attorney Strumpf was retained by U.S. Equities to act on its behalf and acted on the direction of U.S. Equities in filing and litigating the collection action.

18. The collection action Plaintiff, U.S. Equities, alleged that it had purchased the putative Providian Bank debt.

---

[1] Ms. Sabeha's legal name at the time of the suit was Franchesca Bujan; she has since changed her last name to Sabeha.

19. The suit alleged that Ms. Sabeha had defaulted on her obligation and owed an amount of $3,800.99 plus interest.

20. Upon information and belief, Attorney Strumpf did not review any account agreements, billing statements, or other documentation substantiating the alleged debt prior to filing the collection action.

21. Ms. Sabeha has never had a credit card with Providian Bank or any other form of indebtedness owed to Providian Bank.

22. The complaint stated that no payment had been made since August 3, 2001, and demanded interest on the alleged amount due from that date.

23. At the time the lawsuit was filed, the statute of limitations already had expired, and the suit was time-barred.

24. At the time of the collection action, Providian Bank[2] was headquartered in New Hampshire.[3] *See Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 MKB CLP, 2012 WL 1882976, at *1 (E.D.N.Y. May 24, 2012) (finding that Providian Bank is headquartered in New Hampshire.)

25. Pursuant to N.Y. C.P.L.R. §202, for an action to be timely, it must be commenced before the expiration of the time limit by the law of the state where the cause of action accrued.

26. The alleged cause of action in the collection action accrued in New Hampshire the state where Providian Bank, the putative original creditor, was headquartered.

---

[2] Upon information and belief, Providian Bank was acquired by Washington Mutual Bank and is no longer operative as its own entity.

[3] Providian's registration with the Federal Deposit Insurance Corporation lists its main office address as 295 Main Street Tilton, NH 03276 *available at* https://banks.data.fdic.gov/bankfind-suite/bankfind/details/6252 (accessed March 4, 2021.)

27. Under New Hampshire law, an action pursuant to a breach of contract must be commenced within 3 years of the breach. N.H. Rev. Stat. Ann. § 508:4.

28. At the time the collection action was filed, the three-year statute of limitations already had expired.

29. Nevertheless, Attorney Strumpf continued to pursue the collection action and filed an application for a default judgment.

30. In support of the application for a default judgment, Attorney Strumpf submitted an affidavit of service stating that Ms. Sabeha had been served with notice of the lawsuit.

31. By affidavit of service, the process server alleged that service was made pursuant to N.Y. C.P.L.R. § 308(4) and was completed when a copy of the complaint was affixed to the door of 1634 Eastchester Road, Apartment 4, Bronx, New York 10461 on December 28, 2004 at 8:05 PM. Previous attempts at service were allegedly made on December 23, 2004 at 7:26 PM and December 27, 2004 at 2:05 PM.

32. The affidavit of service alleges that 1634 Eastchester Road, Apartment 4, Bronx New York 10461 was Ms. Sabeha's dwelling place.

33. This affidavit of service was false.

34. Ms. Sabeha never lived at 1634 Eastchester Road, Apartment 4 and has never been associated with that address.

35. At the time of the alleged service, Ms. Sabeha resided at 1350 Webster Avenue, Apt. 3H, Bronx, New York 10456.

36. Ms. Sabeha registered the Webster Avenue address as her address with the New York State Department of Motor Vehicles at the time she lived at Webster Avenue.

37. Despite the fact that the action was time barred and service allegedly had been effectuated at an address where Ms. Sabeha never resided, judgment was entered in the collection action on or about September 21, 2005.

38. Ms. Sabeha never received notice that a lawsuit had been filed against her in the collection action.

39. Ms. Sabeha did not receive any notice that a default judgment had been entered against her in the collection action.

40. Upon information and belief, the filing of the false affidavit of service was designed to prevent Ms. Sabeha from timely learning of the lawsuit, which allowed Defendants to obtain a default judgment against Ms. Sabeha.

41. Ms. Sabeha received no notice of the collection action or default judgment until July 2020, when she learned that her bank account was restrained due to the judgment.

42. Because of Defendants' concealment of the collection action Ms. Sabeha could not have reasonably learned about the Defendants' actions until Defendants enforced the judgment.

43. In or around July 2020 Attorney Strumpf issued a bank restraint against Ms. Sabeha.

44. Upon information and belief, Attorney Strumpf did not engage in any review or investigation prior to issuing the bank levy.

45. Had Attorney Strumpf reviewed the complaint prior to issuing the execution, she would have known or should have known that the collection action was time barred.

46. Ms. Sabeha first learned about the lawsuit collection action in or around the second week of July 2020 when she learned that her bank account had been restrained.

47. In or around July 2020, Ms. Sabeha went to a store to purchase some household items. When she went to the checkout register to make the purchase using her debit card, the card was declined.

48. Ms. Sabeha was extremely confused about why her debit card was not working and embarrassed that she could not make a basic purchase.

49. Ms. Sabeha asked the clerk to run the card several times, holding up the line at the store checkout, causing her further embarrassment.

50. Ms. Sabeha had no idea why she was not able to use the money in her account to make the purchase.

51. At that point, Ms. Sabeha called her bank to find out why she could not use her debit card.

52. The bank informed her that they could not provide the information over the phone and that she would have to visit a branch in person.

53. Ms. Sabeha immediately went to a bank branch to find out why she could not access the money in her bank account.

54. When Ms. Sabeha visited a bank branch, she was informed by a bank employee that her account had been restrained due to a default judgment and provided the information for Attorney Strumpf's office.

55. At that point, Ms. Sabeha felt panicked and extremely frightened. She thought that she had lost all of her funds, which she had worked very hard to save and create a financial cushion. She worried that if the debt collector had drained her account, she would not be able to meet her financial obligations and would have to make decisions about which bills were most important to pay.

56. Ms. Sabeha was also extremely upset because she thought she had lost all of the savings that she worked so hard to build. The prospect of being forced into the position of being financially unstable caused great stress and anxiety, which was only exacerbated by the economic changes brought about by the Covid-19 pandemic.

57. At that point, Ms. Sabeha contacted Attorney Strumpf's office by telephone and spoke to a woman who immediately requested that Ms. Sabeha provide personal information.

58. Ms. Sabeha was confused about why she would be required to provide personal information when she was trying to find out what happened to her bank account and thought that she was being scammed, so she ended the call.

59. Ms. Sabeha called back again and spoke to someone else who identified himself as John Murphy ("Mr. Murphy").

60. Upon information and belief, Mr. Murphy is an employee of Attorney Strumpf.

61. Alternatively, upon information and belief, Mr. Murphy is an alias for Hal Siegel, a principal of US Equities.

62. Mr. Murphy informed Ms. Sabeha that the default judgment was the result of an alleged debt owed to Providian that had been purchased by U.S. Equities.

63. Ms. Sabeha was also given the address associated with the account, 1634 Eastchester Road, Apartment 4, Bronx, New York 10461.

64. Ms. Sabeha informed Mr. Murphy that 1634 Eastchester Road was not her address and she had never lived at that address. She further informed Mr. Murphy that she never had an account with Providian Bank.

65. Mr. Murphy replied to Ms. Sabeha that it did not matter that 1634 Eastchester Road was not an address where she has ever resided.

66. Mr. Murphy stated to Ms. Sabeha that she must have forgotten owing the debt to Providian.

67. Mr. Murphy then pressured Ms. Sabeha into paying the debt. Mr. Murphy declared that it did not matter that Ms. Sabeha stated that she never had such an account, she was still responsible for paying it.

68. Ms. Sabeha became very frustrated and ended the call.

69. When this call ended, Ms. Sabeha was even more confused and afraid that she had been the victim of identity theft or fraud, because someone was alleging she owed money to a creditor from whom she had never borrowed money using an address where she had never lived.

70. As a result of this conversation, Ms. Sabeha attempted to file a police report at a local precinct near her home in Manhattan. The police officers there told her that because the alleged fraud occurred in the Bronx, she would have to file the report there.

71. Ms. Sabeha then travelled to the Bronx to attempt to file a police report at a second precinct in the Bronx. The police officers then told her that she needed to go to another precinct in the Bronx to file the report.

72. Ms. Sabeha then travelled to a third police precinct in the Bronx, where she was told by the police officers that she could not file a report because the issue was too old.

73. Approximately two days after Ms. Sabeha first learned that her account had been restrained, she received paperwork from her bank.

74. Even though New York law protects certain funds in a bank account,[4] as a result of the bank restraint and levy imposed by Attorney Strumpf, Ms. Sabeha could not access any of the money in her account. All the funds in her account were "frozen" and could not be withdrawn or used to pay bills. Ms. Sabeha could not use her debit card to make a purchase

---

[4] *See* N.Y. C.P.L.R. §5222-a.

of any amount, nor could she withdraw money from her account using an automated teller machine.

75. On or around July 15, 2020, Ms. Sabeha's bank imposed a fee in the amount of $125 for processing the ill-gotten restraint and levy on her bank account.

76. Ms. Sabeha contacted Attorney Strumpf's office several more times by telephone in or around mid-July 2020 in an attempt to resolve the issue.

77. Through these attempts, Ms. Sabeha repeatedly stated to Attorney Strumpf's office that the debt was not her debt and that she never resided at the address associated with the debt collection lawsuit.

78. In response Attorney Strumpf's office repeatedly told Ms. Sabeha that there was nothing she could do except pay the debt or face the consequences of the judgment.

79. Due to the loss of access to her funds, Ms. Sabeha had difficulty paying her bills. To avoid falling behind on rent and other household expenses, Ms. Sabeha had to borrow money from her child's father, and even from her teenage daughter to make ends meet.

80. At this time, Ms. Sabeha felt depressed and hopeless. The loss of access to the funds that she had worked hard to save caused her to feel worthless and lose hope that she would be able to achieve consistent financial stability for her and her children.

81. Ms. Sabeha was extremely anxious as a result of the loss of the funds that she had worked to save. Ms. Sabeha was worried that due to the COVID-19 pandemic, she may lose her job if funding for her organization was cut; losing access to her savings created even more anxiety about her financial stability and ability to provide for her children.

82. Ms. Sabeha was further distressed because she had worked hard to save money and build a financial reserve; sudden loss of the reserve she had worked hard to build made her feel worthless and defeated.

83. Ms. Sabeha was overwhelmed by the allegations of the debt and loss of access to her funds, but a friend encouraged her to seek ways to resolve the issue.

84. Because of her friends' encouragement, Ms. Sabeha began searching for resources that could assist her in regaining access to her bank account and challenging the default judgment.

85. Ms. Sabeha's place of employment, a homeless shelter, offered a number of resources to assist with obtaining financial stability. At her office, Ms. Sabeha found resources for financial counseling and was able to consult with a financial counselor.

86. The financial counselor recognized that Ms. Sabeha needed legal assistance and referred her to the undersigned legal services organization in or around September 2020.

87. On or around October 13, 2020, Attorney Strumpf issued or caused to be issued an income execution seeking to garnish Ms. Sabeha's wages.

88. Upon information and belief, Attorney Strumpf did not engage in any review of the judgment or underlying court case prior to issuing the income execution.

89. Had Attorney Strumpf engaged in a review of the case file prior to issuing the execution she would have or should have known the case was time barred.

90. Ms. Sabeha's employer received a Marshal's garnishment notice dated October 20, 2020, causing Ms. Sabeha embarrassment.

91. On or about December 2, 2020, Ms. Sabeha moved by order to show cause to vacate the default judgment in the action raising the issue of lack of personal jurisdiction pursuant to N.Y. C.P.L.R. § 5015(a)(4) because of bad service. Alternatively, she moved the court to

vacate the default judgment and restore the case to the trial calendar pursuant to N.Y.

C.P.L.R. § 5015(a)(1) based the fact that she had a reasonable excuse for not answering the

claim and had meritorious defenses to the underlying collections action.

92. By motion, Ms. Sabeha attested to the fact that she never lived at 1634 Eastchester Road,

Apartment 4. She further swore that she did not owe the underlying putative debt, and that

she only discovered that she had a default judgment entered against her until or around July

2020 when her bank account was restrained.

93. At the time Ms. Sabeha moved to vacate the default judgment, she did not have access to the

court file containing the summons and complaint, default judgment, application for default

judgment, or affidavit of service because the court file was archived and stored in an offsite

storage facility.

94. Therefore, Ms. Sabeha could not directly address the allegations regarding service as alleged

by the affidavit of service.

95. Ms. Sabeha's motion was scheduled for an appearance on January 21, 2021.

96. On the return date for the motion, Attorney Strumpf appeared and stated that she had

submitted a written opposition to Ms. Sabeha's motion.

97. Upon information and belief, Attorney Strumpf did not conduct any review or investigation

of the relevant facts or Ms. Sabeha's statements that she did not owe the debt and did not live

at the service address prior to submitting the opposition to Ms. Sabeha's motion.

98. By opposition dated January 13, 2021, Attorney Strumpf alleged that Ms. Sabeha's motion

should be denied because she had not sufficiently rebutted the allegations in the affidavit of

service stating she had been served. Attorney Strumpf knew or should have known that Ms.

Sabeha did not have access to court file or the affidavit of service because Ms. Sabeha stated

by motion that she could not access the court due to pandemic restrictions and because the court file was in storage due to the age of the file.

99. Ms. Sabeha was only able to review the affidavit of service when she received Attorney Strumpf's opposition, which contained those documents.

100. Because Ms. Sabeha could not address the allegations in the affidavit of service due to the unavailability of the court file, she had to ask the court for additional time to supplement her motion.

101. The court granted Ms. Sabeha's request and adjourned Ms. Sabeha's motion to February 5, 2021.[5]

102. Ms. Sabeha filed a supplemental affidavit in support of her motion, again asserting that personal jurisdiction was never acquired because the address at which service was alleged was an address where she had never resided. As proof, Ms. Sabeha annexed records from the New York State Department of Motor Vehicles that listed all of the addresses Ms. Sabeha had utilized on her New York State identification.

103. The annexed records reflected that between March 2, 2004 and November 22, 2005, Ms. Sabeha resided at 1350 Webster Avenue, Apt. 3H, Bronx, New York 10456.

104. Despite the fact that Ms. Sabeha had consistently informed Attorney Strumpf and Attorney Strumpf's office that she did not reside at the alleged service address, only after receiving the supplemental affidavit did Attorney Strumpf agreed to vacate the judgment against Ms. Sabeha and discontinue the action. However, Attorney Strumpf would only agree to do so if

---

[5] Pursuant to Advisory Notice 17, a directive issued by the Deputy Chief Administrative Judge for New York City Courts, defendants who lack access to the court file when challenging a default judgment in a consumer debt case are permitted to supplement their motion with an additional affidavit once the affidavit of service becomes available. The directive is available on the New York Court's website at https://nycourts.gov/courts/nyc/SSI/directives/AN/AN17.pdf.

Ms. Sabeha released any claims Ms. Sabeha possessed against Attorney Strumpf and her clients.

105. Upon information and belief, Attorney Strumpf had access to the court file and affidavit of service during the entirety of the seven months.

106. Upon information and belief, Attorney Strumpf never took steps verify the validity of service by investigating Ms. Sabeha's claims that she was never served and that she never lived at the service address.

107. Upon information and belief, Attorney Strumpf told Ms. Sabeha that her only option was to pay the debt because she knew that Ms. Sabeha, an unrepresented consumer, may believe that statement and agree to pay the putative debt so that she could access the money in her bank account or stop the wage garnishment.

108. Only after intervention by counsel from the undersigned legal services organization did Ms. Strumpf agree to vacate the judgment and discontinue the action without the requirement that Ms. Sabeha waive the claims she possessed against Attorney Strumpf and U.S. Equities.

109. On or about February 4, 2021, Ms. Sabeha and Attorney Strumpf executed a stipulation to vacate the judgment and discontinue the collection action.

110. This stipulation was filed with the Bronx County Civil Court on or about February 4, 2021.

111. Defendants' actions were extremely detrimental to Ms. Sabeha, causing her significant emotional distress and embarrassment.

112. Because of loss of access to her funds, Ms. Sabeha felt hopeless and worthless. For a period of approximately two weeks, Ms. Sabeha felt so overwhelmed with anxiety that she found it difficult to engage in basic tasks such as going to work and caring for her two children.

113. Additionally, Ms. Sabeha's inability to withdraw or use any of the funds in her bank account due to the bank restraint caused Ms. Sabeha financial distress; in order to meet her financial obligations, she had to borrow money to pay her bills. This caused Ms. Sabeha further embarrassment and anxiety.

114. As a result of the levy on her account, Ms. Sabeha incurred a fee from her bank in the amount of $125 dollars.

115. In order to challenge the judgment, Ms. Sabeha had to spend time and effort printing documents, accessing a notary and copying documents in order to file the motion to challenge the judgment in the collection action. All these basic tasks made even more difficult and time consuming due to the COVID-19 pandemic.

116. Ms. Sabeha incurred a $7 fee to obtain her records from the Department of Motor Vehicles to prove that she never resided at the alleged service address.

117. Upon information and belief, Attorney Strumpf has engaged in similar conduct as a standard business practice with a substantial number of other New York consumer litigants who are sued by her office on behalf of U.S. Equities for putative consumer debts.

118. Attorney Strumpf and U.S. Equities Corp. have faced multiple lawsuits for similar behavior, including filing false affidavits of service in order to secure a default judgment. *See, e.g.*, *Synder v. U.S. Equities et al.*, 6:12-cv-06092-CJS (NDNY, 2012); *Caroll v. Linda Strumpf et al.,* 1:18-CV-667 (NDNY, 2019); *Mascoll v. Strumpf et al.,* No. 05-CV-667  (EDNY 2006); *Ferarri v. U.S. Equities et al.*, 3:13CV 395 (D.Conn. 2013).

119. Attorney Strumpf has filed thousands of debt collection actions in the New York State courts on behalf of U.S. Equities.

120.  Upon information and belief, Attorney Strumpf has routinely filed or caused to be filed other false affidavits of service in the New York State Courts.

121. By way of example and not limitation, in 2005, the year the collection action was commenced against Ms. Sabeha, Attorney Strumpf filed 3,158 collection lawsuits in New York State civil or district courts, the vast majority of which were filed on behalf of U.S. Equities.

122. Of the cases filed, 2942 cases had no appearance whatsoever, indicating a judgment entered on default. These 2,942 cases constitute over 93% of the cases Attorney Strumpf filed in New York State in 2005.

123. An additional 157 cases had appearances in years after 2005, indicating that these are cases where the defendant challenged the judgment after it had been entered.

124. Upon information and belief, Attorney Strumpf has sought default judgments in collections lawsuits against New York consumer litigants after filing false affidavits of service.

125. Upon information and belief, many of these suits filed by Attorney Strumpf were time barred and filed after the statute of limitations had expired.

## FIRST CAUSE OF ACTION
### (FDCPA, 15 U.S.C. § 1692)
*Against Attorney Strumpf and U.S. Equities*

126. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

127. Defendants Attorney Strumpf and U.S. Equities violated the FDCPA, 15 U.S.C. §§ 1692e, and 1692f, by making false and misleading representations, using deceptive means, and engaging in unfair and abusive practices.  Defendants Attorney Strumpf's and U.S. Equities' violations include, but are not limited to:

16

a. Filing or causing to be filed a false affidavit of service.

b. Filing a lawsuit after the statute of limitations expired.

c. Commencing a collection action without meaningful review of the claim and enforcing a judgment without meaningful review of the underlying claim and documentation used in securing the default judgment

## SECOND CAUSE OF ACTION
### (N.Y. Gen. Bus. Law § 349)
*Against Attorney Strumpf and U.S. Equities*

128. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

129. Defendants Attorney Strumpf and U.S. Equities violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of their business.

130. Defendants Attorney Strumpf and U.S. Equities committed the deceptive acts and practices willfully and/or knowingly.

131. Defendants Attorney Strumpf and U.S. Equities' conduct was consumer-oriented and has a broad impact on the New York consuming public.

132. Defendants Attorney Strumpf and U.S. Equities wrongful and deceptive acts caused injury and damages to Plaintiff.

133. Defendant Strumpf and U.S. Equities' violations include, but are not limited to:

a. Seeking a default judgment in the collections lawsuit against Ms. Sabeha after filing a false affidavit of service.

b. Filing an action that Attorney Strumpf knew or should have known was time-barred.

    c.   Enforcing a default judgment that was obtained by filing a false affidavit of service.

    d.   Enforcing a default judgment that was invalid because the suit was time barred at its inception.

134. As a direct and proximate result of these violations of section 349 of the General Business Law, Ms. Sabeha has suffered compensable harm and is entitled to recover actual and treble damages, costs and attorney's fees.

## JURY DEMAND

135.   Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff requests the following relief:

   a.   A declaration that all Defendants have committed the violations of law alleged in this action;

   b.   An order enjoining and directing all Defendants to cease violating G.B.L. § 349 *et seq.*;

   c.   Statutory damages under 15 U.S.C. § 1692k;

   d.   An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k and G.B.L. § 349;

   e.   A judgment for actual, statutory, punitive, and exemplary damages;

   f.   Prejudgment and post judgment interest as allowed by law;

   g.   Such other and further relief as to the Court may appear just and proper.

Dated:  New York, New York
       May 12, 2021

                        Respectfully submitted,

BETH GOLDMAN, ESQ.
NEW YORK LEGAL ASSISTANCE GROUP
100 Pearl Street, 19th Floor
New York, New York 10004


By: /s/ Sarah Rosenthal
Sarah Rosenthal, of Counsel
Attorney for Plaintiff Franchesca Sabeha
Phone: (212) 613-6557
Fax: (212) 714-7318
Email: srosenthal@nylag.org

By: /s/ Shanna Tallarico
Shanna Tallarico, of Counsel
Attorney for Plaintiff Franchesca Sabeha
Phone: (212) 613-6555
Fax: (212) 714-7591
Email: stallarico@nylag.org